**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MICHAEL A. PERO, III, | : | Civil Action No. 04-5927 (JAP) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| WARDEN JOHN DUFFY, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Michael A. Pero, III
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ 07114

Counsel for Respondents
Annmarie Cozzi
Bergen Co. Prosecutor's Ofc.
Bergen Co. Justice Center
Hackensack, NJ 07601

**PISANO**, District Judge

Petitioner Michael A. Pero, III, a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1] The respondents are Warden John Duffy and the Attorney General of New Jersey.

Because it appears that Petitioner is not entitled to issuance of the writ, the Court will deny the Petition.

## I. THE INTERSTATE AGREEMENT ON DETAINERS

This matter involves a prisoner's request for trial pursuant to Article III of the Interstate Agreement on Detainers. The Interstate Agreement on Detainers ("IAD") is a congressionally-sanctioned interstate compact among 48 states (including both New Jersey and Connecticut), the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. See 18 U.S.C. App.II § 2; N.J.S.A. 2A:159A-1 to -15; Conn. Gen. Stat. § 54-186; New

---

[1] In his original Petition and Amended Petition, Petitioner asserted jurisdiction under 28 U.S.C. § 2254, which applies to persons "in custody pursuant to the judgment of a State court," and alleged contradictorily both that he had been convicted on September 23, 2003, and that this was a pre-conviction application. From the Respondents' Answer and exhibits, it is apparent that Petitioner was a pre-trial detainee at the time he filed his Petition, but that he had been convicted and sentenced by the time the Answer was filed. As Petitioner was a pre-trial detainee at the time the Petition was filed, jurisdiction lies not under § 2254, but under 28 U.S.C. § 2241. See, e.g., Moore v. DeYoung, 515 F.2d 437, 441-42 (3d Cir. 1975).

Section 2241 provides in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
> (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

York v. Hill, 528 U.S. 110 (2000); Cuyler v. Adams, 449 U.S. 433, 442 (1981); U.S. v. Paredes-Batista, 140 F.3d 367, 372 n.9 (2d Cir.), cert. denied, 525 U.S. 859 (1998). The IAD aims "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints" by providing cooperative procedures among the party jurisdictions. IAD, Art. I.

Among those procedures, Article III permits a prisoner incarcerated in one jurisdiction to initiate proceedings to bring him to trial on charges pending in another jurisdiction. Specifically, Article III provides in pertinent part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the

> prisoner, and any decision of the State parole agency relating to the prisoner.
>
> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
>
> (c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

In addition,

> (a) In response to a request made under article III ... hereof, the appropriate authority in a sending State shall offer to deliver temporary custody of such prisoner to the appropriate authority in the State where such indictment, information, or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in article III of this agreement. ...

IAD, Art. V(a). Failure to abide by the time limit set forth in Article III requires dismissal of the indictment. IAD, Art. V(c).

Standard forms have been adopted by all signatories to the IAD. <u>See</u> <u>Casper v. Ryan</u>, 822 F.2d 1283, 1285 n.2 (3d Cir. 1987), <u>cert. denied</u>, 484 U.S. 1012 (1988); The Council of State Governments, <u>The Handbook on Interstate Crime Control</u> 125-33

(1978). The forms for use in an Article III request for final disposition are:

> Form I: "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," to be signed and dated by the warden of the custodial institution where the inmate is held, and then signed and dated by the inmate to acknowledge receipt.
>
> Form 2: "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," to be addressed to the Prosecutor in the jurisdiction where a charge is pending, signed and dated by the inmate.
>
> Form 3: "Certificate of Inmate Status," to be signed and dated by the warden, and to include: (1) The term of commitment under which the prisoner is being held, (2) the time already served, (3) time remaining to be served on the sentence, (4) the amount of good time earned, (5) the date of parole eligibility of the prisoner, (6) the decision of the parole board relating to the prisoner, (7) the maximum expiration date under the present sentence, and (8) detainers currently on file against this inmate from the same state.
>
> Form 4: "Offer to Deliver Temporary Custody," to be signed by the warden.

## II. BACKGROUND

The relevant facts are set forth in an opinion of the Superior Court of New Jersey, Appellate Division.

> Here is the relevant history as appears in the record. On December 28, 2000, a grand jury indicted defendant on charges of first-degree kidnapping, N.J.S.A. 2C:13-1b; first-degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); third-degree theft, N.J.S.A. 2C:20-3; fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5d; and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d. The charges were based on acts allegedly perpetrated on February 5, 2000; defendant's mother was the alleged victim.

Defendant was indicted on these charges in Bergen County on December 28, 2000 and was scheduled to appear for arraignment on January 22, 2001. When he failed to appear, a warrant issued for defendant's arrest. After his subsequent arrest in Connecticut on unrelated charges, the Bergen County Prosecutor forwarded a detainer to Connecticut prison officials. [FN4] Defendant was sentenced to prison in Connecticut on October 31, 2002.

FN4. The prosecutor apparently faxed a detainer, that is, a notice of pending charges, along with a copy of the January 22, 2001 arrest warrant, first on January 31, 2001 and again on September 18, 2001.

On November 7, 2002, defendant's informal, handwritten "notice and a request for final disposition," citing Article III of the IAD, was received by the warden of Connecticut's MacDougall-Walker Correctional Institution, where defendant was then held. The warden responded informally on November 14, advising defendant of his right to file for a trial in New Jersey and informing him that "the paperwork will be generated by Records and you will sign the necessary forms with your assigned assessment counselor." On November 19, 2002 defendant signed IAD Forms 1 and 2, provided by the Connecticut DOC as required by N.J.S.A. 2A:159A-3(c), thereby initiating his request for disposition of the New Jersey indictment. Apparently, a "records specialist" in the MacDougall-Walker facility in Connecticut partially completed Forms 3 and 4, which required the warden's signature. But those forms were not signed. The record on appeal includes unsigned Forms 3 and 4, each bearing the typed date November 1, 2002. The records specialist also prepared cover letters addressed to the Bergen County Prosecutor and the "Clerk of the Court" in Bergen County, dated November 21, 2002, purporting to attach "Forms 2, 3, and 4." Assuming that the appropriate New Jersey authorities received some documents from Connecticut "on or about" November 25, 2002 as defendant claims, he admits that "the records specialist mailed out Form 3 and Form 4 without the warden signing them."

In March 2003, defendant was transferred to a different Connecticut prison, the Garner Correctional

Institution. On March 20, 2003, defendant wrote to the Bergen County Prosecutor's office, inquiring as to New Jersey's intention, enclosing a copy of his November 19 request for disposition, and alleging a 180-day deadline from that date to bring him to trial. In response to his request some four months later that Connecticut prison authorities check the status of his request for trial in New Jersey, defendant was permitted to make a telephone call to the court clerk in Bergen County. According to defendant, the clerk told him "all the paperwork is here. We are just waiting for somebody to pick you up. Everything is all set." The court clerk also faxed to defendant copies of the documents received in November from Connecticut. Defendant made copies of those documents, and on March 20, 2003 he sent a packet of material to both the Bergen County Prosecutor and the court clerk. He asked to be informed "of the intention of the State of New Jersey regarding these outstanding matters." Finally, completed and signed Forms 3 and 4 were sent by Garner prison personnel in April and received by the Bergen County Prosecutor on April 10, 2003.

The State now appears to admit it received Forms 1 and 2, signed by defendant, in November 2002. [FN5] The record includes unsigned copies of cover letters from the Connecticut DOC to the Bergen County Prosecutor and to the "Clerk of Court, Bergen County," dated November 21, 2002, referring to "[a]ttached" "I.S.D. Forms 2, 3, 4." The record also includes unsigned copies of Forms 3 and 4, dated November 21, 2002, certifying defendant's commitment to MacDougall-Walker and his incarceration for the preceding 853 days. However, the only <u>signed</u> Forms 3 and 4 are dated April 3 and 2, respectively, and certify defendant's then current commitment at Garner and his incarceration in Connecticut for the preceding 1041 days. The State plainly did not receive Forms 3 and 4, signed by the warden, until after April 3. [FN6]

FN5. The assistant prosecutor appears to have apologized to the court for a misstatement in his brief, in which he had said that the State received only Form 1, and not Form 2, in November, although in later argument he claims only to have admitted that defendant <u>signed</u> Form 2 in November. The distinction is not material to our decision.

FN6. The signed copies of Forms 3 and 4 in the record appear under the heading of the Garner prison facility, to which defendant was moved for the first time in March 2003, whereas the unsigned Forms 3 and 4 bore the heading of the MacDougall-Walker facility, where defendant was incarcerated in November 2002.

For purposes of this motion, and our review, we will assume that the State received unsigned copies of Forms 3 and 4 in November. Thus the only issue before us is whether the 180-day period prescribed by the IAD was triggered by the Prosecutor's receipt of signed Forms 1 and 2 and unsigned Forms 3 and 4 in November, or whether the State's time to bring defendant to trial ran only from its April 10 receipt of all four completed forms, including those signed by the Connecticut authority on April 2 and 3.

The history thereafter is not in issue. The Law Division judge remanded defendant without bail on June 9, 2003. On July 10, the judge ordered a psychiatric exam to determine defendant's competence to stand trial, to represent himself, to waive an insanity defense, and whether he was a danger to himself or others. An August 11 trial date was set in that order. The record indicates that on August 11, the court accepted a psychiatric report determining defendant's competence to stand trial and to represent himself, and that he was not a danger to himself or others.

Defendant's motion to dismiss pursuant to the IAD also was argued on August 11, at which time the judge set September 9 for a status review and September 29 as the trial date. The judge's written letter decision denying defendant's motion was dated September 16, 2003. [FN7] The motion judge found that April 10, 2003 was the date that triggered the 180-day window within which the State had to bring defendant to trial under Article III.

FN7. Although we cannot determine from the record how the judge came to reschedule the trial thereafter to December 24, defendant does not contend that he is entitled to dismissal based on proceedings after June 9 or any subsequent adjournment.

> We have previously held that the State may seek a continuance even after expiration of the 180-day period, so long as an order dismissing the indictment has not yet been entered. [Citations omitted.]
>
> The thrust of defendant's argument in the Law Division in support of his motion to dismiss the indictment was that the IAD required New Jersey to bring him to trial within 180 days of receiving his request for "final disposition"' that he submitted the required written form request to invoke the IAD to Connecticut prison authorities on November 19, 2001; that certain of the required forms were mailed to the Bergen County Prosecutor's office on November 21, 2002 and received in that office on November 25, 2002; that he was not brought to court in New Jersey until June 9, 2003; and that because he was not brought to trial within 180 days of his request, [FN8] the indictment must be dismissed.
>
> FN8. Counting from November 25, the 180th day would have been May 24, 2003.

State v. Pero, 370 N.J. Super. 203, 208-212 (2004) (emphasis in original). The Appellate Division held that "an effective Form 2 request for disposition must include completed and signed Forms 3 and 4, and that the IAD demands strict compliance with its procedures." Thus, the triggering date for the 180-day time limit was April 10, 2003.

Petitioner thereafter filed a motion for leave to appeal to the Supreme Court of New Jersey. By Order filed September 23, 2004, the Supreme Court of New Jersey denied leave to appeal. Pursuant to a jury trial, Petitioner was convicted on all counts on February 10, 2005. The trial court judgment of conviction was entered on March 17, 2005. Petitioner filed a direct appeal of

the conviction which is pending before the Superior Court of New Jersey, Appellate Division.

This Petition, dated November 23, 2004, was received by this Court on December 2, 2004. The Petition invoked jurisdiction pursuant to 28 U.S.C. § 2254 and stated that Petitioner had been convicted on September 23, 2003, but also stated that this was a pre-trial application. This Court issued its Notice and Order [2] informing Petitioner of certain consequences of filing such a petition and giving the Petitioner an opportunity to file one all-inclusive § 2254 petition, as required by Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Petitioner responded by submitting an Amended Petition, which Respondents answered on June 16, 2005, after Petitioner's conviction. Petitioner has replied and this matter is now ready for disposition.

## III. ANALYSIS

In his Amended Petition, Petitioner asserts four grounds for relief:

> A. Ground One: DEFENDANT EXECUTED ALL TECHNICAL REQUIREMENTS OF I.A.D. AND CANNOT BE SADDLED WITH CONSEQUENCES OF OFFICIAL ERRORS.
>
> ...
>
> B. Ground Two: N.J. APPELLATE SECTION'S UNPRESENTED DECISION IS CONTRARY TO THE INTERSTATE AGREEMENT ON DETAINERS ACT N.J.S.A. 2A:159A-1 et seq.
>
> > SAID DECISION PLACES AN UNREALISTIC BURDEN ON PRISONERS TO ENSURE COMPLIANCE WITH THE ENTIRE I.A.D. APPLICATION PROCESS, AND DENIES DEFENDANT DUE PROCESS OF LAW AND A SPEEDY

TRIAL UNDER BOTH THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

C. Ground Three: APPELLATE SECTION PANEL UNABASHEDLY MAINTAINS THAT THE ONUS IS SOLELY ON THE DEFENDANT TO OVERSEE COMPLIANCE WITH THE ENTIRE I.A.D. APPLICATION PROCESS.

...

D. Ground Four: N.J. AUTHORITIES DID NOT CONTINUE EFFORT TO OBTAIN TEMPORARY CUSTODY OF PRISONER ONCE I.A.D. REQUEST WAS RECEIVED.

...

(Amended Petition ¶ 12.) Petitioner asks this Court for an order dismissing the New Jersey indictment.

In their Answer, Respondents concede that Petitioner is challenging a pretrial ruling exhausted in the state courts. (Answer at 2, n.3.) They ask this Court to deny the Petition on the merits.

This Court has jurisdiction pursuant to 28 U.S.C. § 2241 to grant a pre-trial writ of habeas corpus to a state prisoner facing criminal prosecution under certain extraordinary circumstances. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490 (1973); Webb v. Court of Common Pleas of Philadelphia County, 516 F.2d 1034, 1037-39 (3d Cir. 1975); Moore v. DeYoung, 515 F.2d 437, 441-43 (3d Cir. 1975).

An interstate compact constitutes federal law only if: (1) it falls within the scope of the Constitution's Compact Clause, (2) it receives congressional consent, and (3) its subject matter

is appropriate for congressional legislation. Cuyler v. Adams, 449 U.S. 433, 439-40 (1981). The IAD constitutes federal law because Congress "gave its consent in advance by enacting the Crime Control Consent Act of 1934," and the IAD's subject matter is an appropriate subject for congressional legislation. Id.; Carchman v. Nash, 473 U.S. 716, 719 (1985). Thus, a violation of the IAD is a proper subject for federal habeas relief. McCandless v. Vaughn, 172 F.3d 255, 263 (3d Cir. 1999); Casper v. Ryan, 822 F.2d 1283, 1288 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1988).

Here, however, the original requests of the Petition are now moot; Petitioner has been tried, convicted, and sentenced. Cf. Pringle v. Carroll, 2006 WL 1319545 (D.Del. 2006); Purcell v. Gray, 1990 WL 50853 (E.D. Pa. 1990).

In addition, Petitioner has not exhausted his state remedies.[2] As noted by the Court of Appeals for the Third Circuit in Moore v. DeYoung, under New Jersey procedure, Petitioner was not entitled, as of right, to appeal the pre-trial order of the state judge. 515 F.2d at 444-45 (citing N.J.Ct.R. 2:2-2, 2:2-4, 2:2-5). Instead, Petitioner was required to move for leave to appeal; denial of the motion seeking interlocutory

[2] Although § 2241 does not by its language require exhaustion of state remedies, an exhaustion requirement has developed through decisional law. See Moore v. DeYoung, 515 F.2d 437, 442-43 (3d Cir. 1975).

review did not constitute a ruling by the Supreme Court of New Jersey on the merits of Petitioner's IAD claim. Id. Thus, the IAD claims raised in the state court proceedings are not exhausted. Nor did Petitioner ever raise in the state courts his claim that a rule of strict compliance with IAD procedures deprives a prisoner of his rights to due process and a speedy trial under the U.S. Constitution.

Respondents' concession in the Answer does not constitute a waiver of the defense of non-exhaustion. Cf. Dreher v. Pinchak, 61 Fed.Appx. 800, 803, 2003 WL 693262 (3d Cir.), cert. denied, 540 U.S. 888 (2003) (finding, with respect to a § 2254 petition, that waiver of the statutory exhaustion requirement must be express, and that "for waiver to be effective, something more than a concession in an answer is required").

As Petitioner's direct appeal is pending before the Appellate Division, Petitioner has the opportunity to exhaust his state remedies before bringing his IAD and constitutional claims in a petition for writ of habeas corpus under § 2254. Accordingly, the Petition will be denied without prejudice. See Pringle, 2006 WL 1319545. This Court expresses no opinion as to the merits of Petitioner's claims.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be denied without prejudice. An appropriate order follows.

Date: June 26, 2006

/s/ JOEL A. PISANO
United States District Judge

Original: Clerk
cc: Judge Arleo
All Parties
File